RECEIVED

SEP 17 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

Phillip B. Shane,

Plaintiff,

v.

UNITED STATES,

Defendant.

Case No.: 1:07-cv-577 (RBW)

**Response to Motion to Dismiss**

**RESPONSE TO MOTION TO DISMISS**
**INTRODUCTION**

Defendant's assertion that this Court lacks subject-matter jurisdiction in the instant matter on the basis of the frivolous assertion that I "failed to state an unauthorized collection claim" is without merit.

I, Phillip B. Shane, Plaintiff, hereby respond to the United States' Motion to Dismiss my Verified Amended Complaint:

At the outset, it should be noted that while counsel for the defendant attempts to paint my amended complaint as a refund suit by using the word "refund" no fewer than fifteen (15) times in her memorandum. However, counsel also concedes that my amended complaint is in fact a damages action brought under 26 U.S.C. § 7433. Indeed, in the second sentence of counsel's memorandum she asserts, "Plaintiff seeks damages for alleged unauthorized collection activities." This concession by defendant is contrary to the majority of argument counsel presents in her frivolous and unconvincing memorandum.

Defendant again concedes "The amended complaint seeks damages under 26 U.S.C. § 7433." (Def.'s Mem. pg 2 at #2)

## QUESTION PRESENTED

Was counsel's "refund suit" construction of the Verified Complaint - in the absence of a venue assertion - a willful mischaracterization intended to mislead the Court?

## DISCUSSION

Under the "refund suit" statute, 26 U.S.C. § 7422, and 28 U.S.C. § 1402(a), venue for a refund suit is proper only in the judicial district in which the plaintiff resides. Plaintiff contends that defendant should be estopped from "converting" Plaintiff's damages claim (clearly intended) into a refund claim (clearly unintended) in the absence of a venue challenge.

Further, Plaintiff asserts that the omission of a venue challenge indicates defendant's awareness of venue for such a suit. Plaintiff contends that, absent a venue challenge, defendant's Motion to Dismiss on "refund" was little more than a dilatory tactic, intended to mislead the Court, through prejudice, into a dismissal on any grounds.

Accordingly, defendant's arguments regarding a non-existent "refund" suit must fail as intentionally misleading and dilatory. Clearly, counsel has expressed knowledge and conceded that my amended complaint is not a "refund" suit. As such, counsel's arguments regarding any alleged failure to serve the IRS are irrelevant and likewise intentionally misleading.

Counsel has conceded the fact that my amended complaint is a damages action under 26 U.S.C. § 7433, and not a "refund" suit. Therefore, counsel is fully aware that the IRS cannot legally be a party to the instant action and that service upon IRS is not warranted under § 7433.

As such, counsel fails to present any argument relevant to any of the claims presented in my Verified Amended Complaint until page six (6) of her memorandum.

II

## COUNSEL'S EXHAUSTION OF ADMINISTRATIVE REMEDIES ARGUMENT

Counsel incorrectly asserts that this Court does not have jurisdiction over plaintiff's claim for damages under 26 U.S.C. § 7433 because plaintiff has failed to demonstrate that he filed an administrative claim for damages with the Internal Revenue Service.

## QUESTION PRESENTED

Did IRS fail to make any substantive "administrative remedies available" under 102 Stat. 3747 (TBOR I), 110 Stat. 1465 (TBOR II), or 112 Stat. 730(TBOR III), aka IRC § 7433?

## DISCUSSION

The history of "26 CFR 301.7433-1" is its own best evidence that IRS refused to even establish procedures for four years after the right to bring an action was granted by Congress.[1] It is evident that "26 CFR13301.7433-1" currently imposes a prohibitive provision omitted by Congress (which defendant vigorously denies). Further review of Official documents of the Office of the Federal Register establish that defendant's response that "26 CFR 301.7433-1" lacks the "certain substantive characteristics" and "certain procedural requisites" Chrysler v. Brown, 441 U.S. 281, at 301, of "a substantive rule--or a "legislative-type rule," Id., 302.

Neither the Secretary of the Treasury nor any authorized delegate made *any* substantive "administrative remedies available" IRC § 7433 "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. 199, at 232, under any incarnation of Internal Revenue Code section 7433.

[1] Timing was a particular factor considered in Batterton v. Francis, 432 U.S. at 425 n. 9, and quoted in Chrysler v. Brown, 441 U.S. 281, at 315, infra, in differentiating "substantive" and "interpretative (interpretive)" regulations. The "timing" of T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003, is discussed below.

As the Honorable Rehnquist, J., stated in Chrysler v. Brown, 441 U.S. at 301,302,

"In order for a regulation to have the "force and effect of law," it must have certain substantive characteristics and be the product of certain procedural requisites. The distinction among agency regulations ...is that between "substantive rules" on the one hand and "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" on the other. *** But in Morton v. Ruiz, 415 U.S.199, 94 S. Ct. 1055, 39 L.Ed.2d 270 (1974), we **1718 noted a characteristic inherent in the concept of a "substantive rule." We described a substantive rule--or a "legislative-type rule," id., at 236, 94 S. Ct., at1074-as one "affecting individual rights and obligations." Id., at 232, 94S. Ct., at 1073.
This characteristic is an important touchstone for distinguishing those rules that maybe "binding" or have the "force of law." Id., at 235, 236,94 S.Ct., at 1074."

The Chrysler Court continued, at 303:[2]

"Likewise, the promulgation of these regulations must conform with any procedural requirements imposed by Congress. Morton v. Ruiz, supra, at232. For agency discretion is limited not only by substantive, statutory grants of authority, but also by the procedural requirements which "assure fairness and mature consideration of rules of general application." NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969)." (Emph. added)

"[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]"[3] lacks the "complete citation of the authority under which the section is issued" required by 1 CFR 21.40, "including-(a)General or specific authority delegated by statute; and (b)Executive delegations, if any, necessary to link the statutory authority to the issuing agency", one of the Agency Responsibilities published in 1 CFR 21.41.

The published "26 CFR 301.7433-1"contains neither a citation to 102 Stat. 3747 (TBOR I), nor to 110 Stat. 1465 (TBOR II),nor to 112 Stat. 730 (TBOR III), *aka* IRC § 7433, in any

---

[2] Within the above analysis, footnote 31 included the commentary:

"In contrast [the Attorney General's Manual] suggests that "interpretive rules" and "general statements of policy" do not have the force and effect of law. Interpretive rules are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." Ibid. General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power."

[3] This series of Treasury Decisions purporting to "promulgate" and "amend" 26 CFR 301.7433 is quoted directly therefrom, including the brackets.

incarnation, as the source of authority, as required by the Office of the Federal Register in its administration of the Federal Register Act, at 1 CFR 21.43(a), and 1 CFR 21.52; nor does it contain a citation to any substantive authority, as exemplified in 1 CFR 21.45, and 1 CFR 21.53.

Based upon the standard established by Chrysler v. Brown, *supra*, Morton v. Ruiz, *supra*, and by the Office of the Federal Register publishing the Code of Federal Regulations[4] in its administration of the Federal Register Act, "26 CFR 301.7433-1" is nothing more than an "interpretative regulation" not "affecting individual rights and obligations".

In deciding upon the distinction between "substantive" and "interpretative (interpretive)" regulations, the Chrysler Court pointed out, at 441 U.S. 315, that the regulation at issue therein established, *inter alia*:

> " 'As the changes made by this document relate solely to interpretive rules, general statements of policy, and to rules of agency procedure and practice, neither notice of proposed rule making nor public participation therein is required by 5 U.S.C. 553. Since the changes made by this document either relieve restrictions or are interpretative rules, no delay ineffective date is required by 5 [441 U.S. 315] U.S.C. 553(d). These rules shall therefore be effective immediately.' "

> Chrysler v. Brown followed, at 441 U.S. 315, its own precedent, set 2 years previously:

> "As we observed in Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct.2399, 2405 n. 9, 53 L.Ed.2d 448 (1977):
>
> "[A] court is not required to give effect to an interpretative regulation. Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." "We need not decide whether these regulations are properly characterized as "interpretative rules." It is enough that such regulations are not properly promulgated as substantive rules, and therefore not the product of procedures which Congress prescribed as necessary prerequisites to giving a regulation the binding effect of law."

[4] ("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1).

The published "26 CFR 301.7433-1", containing only the bracketed reference"[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", contains the statement, in part, that:

> "It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations..."

Section 4 of the Administrative Procedure Act, at 5 U.S.C. § 553(b), provides for ONLY two exceptions to the requirement that "General notice of proposed rule making shall be published in the Federal Register":

> "*****
> "Except when notice or hearing is required by statute, this subsection does not apply –
>
> "(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
>
> "(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued)that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."

In the clear absence of an incorporated "finding and a brief statement of reasons therefor" as specified in 5 USC § 553(b)(3)(B), the assertion that "section 553(b) of the Administrative Procedure Act...does not apply to these regulations...", "26 CFR301.7433-1" is its own best evidence that it is "an interpretative regulation" Chrysler,441 U.S. 281 at 315; Batterton v. Francis, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232, that "[A] court is not required to give effect to" Batterton v. Francis, *supra*.

As referenced in footnote 1, supra, Batterton v. Francis, *supra,* identified "timing" as a factor in determining whether a regulation is "substantive" or "interpretive"("interpretative"). Treasury Decision 8392 was not promulgated until January 30, 1992, and not published, 57 FR 5931, until February 18, 1992; nearly three (3) years after Congress enacted TBOR I.

Treasury Decision 9050 was not promulgated until March 5, 2003, effective until March 25, 2003, more than four years and nine months after Congress' enactment of TBOR III. In fact, the regulation was not even proposed until March 5, 2002. Federal Register: Volume 67, Number 43, Page 9929-9934.[5]

This period of "unavailability" of administrative remedy, i.e., the "timing" discussed in Batterton, *supra*, is a factor that this Court should consider in respect of the March 25, 2003 version of the regulation.

AVAILABILITY OF REMEDY

A comprehensive history of IRC § 7433 was published by the American Bar Association, and Plaintiff respectfully directs the Court's attention to what the Bar had to say about the re-amendment:

> "[F]ew pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust of the ability of the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual notice of the process" directly addresses "availability" of remedy, as shown by IRS' published policy regarding return of amounts unlawfully collected. Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected. P-5-36 states:

"(1) Returning money wrongfully collected: This Policy Statement has been revoked."

---

[5] In respect of Congress' removal of the jurisdictional prohibition in TBOR II (1996), Plaintiff has been unable to find an amended final regulation, but was able to find the "Notice of proposed rulemaking" discussing TBOR II. The "Notice of proposed rulemaking" clearly shows that IRS was aware of Congress' removal of the jurisdictional prohibition. It must be noted that Treasury Decision 9050, as published, 68 FR 14320, purported to amend ONLY Treasury Decision 8392 (the 1992 regulation) indicating that no "final" regulation implementing the1996 Act (TBOR II) ever became effective. "Remedy", under TBOR II, was never made "available".

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and TBOR III (RRA '98, § 3102) are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at University of California, Berkeley,

> "The IRS's comparative advantage is using random terror to elicit Voluntary compliance with the tax code…".

Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole. Once again, the Congressional "key" is availability of the administrative remedy. As a matter of judicial precedent, Chrysler v. Brown, *supra*, Morton v. Ruiz, *supra*, and the procedural requirements imposed by the Office of the Federal Register publishing the Code of Federal Regulations[6] in its administration of the Federal Register Act, applied to Treasury Decisions 8392 and 9050 are and always were "an interpretative regulation "Chrysler, 441 U.S. 281 at 315; Batterton v. Francis, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232, that "[A]court is not required to give effect to" Batterton v. Francis, *supra.*

Alternatively, if the Court makes a factual determination (province of the jury) that an administrative remedy is effectively unavailable, it need not be pursued. As established by Treasury Decisions 8392 and 9050, defendant's agency refused to even establish procedures for

---

[6] ("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR8.1).

four years after the right to bring an action was initially granted by Congress. Administrative remedy, arguably available in an interpretative sense, is effectively unavailable in substance, as evidenced by TIGTA reports, mandated in RRA '98, section 1102, failing to show a single instance of IRS granting an administrative claim for damages.

Agency expertise is another factor that Batterton v. Francis, *supra*, identified as worthy of consideration. Lack of specific attention to the statutory authorization was a factor in the Supreme Court's pronouncement in *Skidmore v. Swift & Co.*, 323 U.S. 134,140 (1944), quoted in *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 287 n. 5(1978), and cited in *SEC v. Sloan*, 436 U.S. 103 (1978), further specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *SEC v. Sloan*, 436 U.S. 103, 117-118.

Treasury Decision 9050 itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness…in its consideration" (Sloan). In Treasury Decision 9050's subsection (a), paragraph (1) thereof changes, "reckless or intentional actions" to "reckless or international actions…"(emphasis added). Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102; the procedures therein fail to conform to the law, and the regulation fails "all those factors which give it power to persuade." *SEC v. Sloan*, 436 U.S. 103, 117-118. Defendant's "exhaustion" argument relies on a substantive regulation that does not exist and, therefore, fails in its entirety as unsupported by law.

**III**

**COUNSEL'S FAILURE TO STATE A CLAIM ARGUMENT FAILS**

## QUESTION PRESENTED

Is defendant asking the Court to impose a "heightened pleading standard" to misdirect the Court toward dismissal?

## DISCUSSION

Defendant initially asserts that "Plaintiff's amended complaint is legally insufficient because it fails to provide the necessary factual detail to state a claim, and should be dismissed under Fed.R.Civ.P. 12(b)(6)." (Def's Mem pg 8 ¶ 2)

However, defendant, immediately thereafter, acknowledges that "A complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)."

I assert that my Verified Amended Complaint meets the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in *Conley v. Gibson*, 355 U.S. 41[7] and reiterated in *Jones v. Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____ (January, 2007).

In *Jones v Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____, (Argued: October 30, 2006 -- Decided: January 22, 2007), the Honorable Roberts, C.J., opined that:

> "Courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163,"[8]

and,

> "...such a result 'must be obtained by amending the Federal Rules, and not by judicial interpretation.' Leatherman, supra, at 168. Pp. 10-16."

---

[7] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

[8] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163 Held: A federal court may not apply a "heightened pleading standard" -- more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)

Plaintiff asserts that the Verified Amended Complaint met the "notice pleading" Requirements set forth in Fed. R. Civ. P. 8(a) as interpreted in *Conley v. Gibson* 355 U.S. 41 and reiterated in Jones v. Bock (Nos. 05-7058 and 05-7142) __ U.S. _____8(January, 2007), and that defendant's Motion to Dismiss, insofar as it asserted "failure to state a claim", is premature, and an attempt to pre-empt the jury's authority as the "proper trier" of the contested "essential element" of exhaustion of "***administrative remedies available*** " as described in IRC § 7433(d)

7433(d)'s language - "unless the court determines" - in the common English to which *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id., 861, calls for a determination of fact; clearly within the province of the jury. *Arbaugh*, 1240; *Reeves*. Thus, motion to dismiss on grounds of "failure to state a claim" can be, and, based upon the Congressional language, is, more properly brought after the Court has had the opportunity to make a factual determination with respect to exhaustion of available administrative remedies.

Defendant's motion, devoid of the usual, if obsolete, attempts to avoid litigating damages through unwarranted reliance upon an internal statement of policy[9], is a dilatory tactic, intended to needlessly increase the cost of this litigation; insofar as it asserts "failure to state a claim", it is nothing more than an attempt to have the Court to impose a "heightened pleading standard", by attempting to require "pre-disclosure", without the parameters of Fed.R.Civ.P. 26-37.

Defendant's lengthy Memorandum in Support has certainly shown that my Verified Amended Complaint "gives the defendant fair notice of the claim" contained therein,[10] as described in Fed.R.Civ.P. 8(a). Even if defendant's frivolous assertion that something more than the Rule's "short and plain statement of the claim" were found to have a basis, as a pro se

[9] See: Chrysler v. Brown, 441 U.S. 281, at 301, 302; Morton v. Ruiz, 415 U.S. 199, at 236; Batterton v. Francis, 432 U.S. 416, 425 n. 9; compare: TREASURY DIRECTIVE 28-01 and TREASURY DIRECTIVE 25-03.

[10] It appears as if defendant has already admitted that at least 17 of the counts are actionable under 26 USC § 7433.

litigant, my pleadings should be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and I should be allowed to amend, to cure the asserted defect, if any.

**QUESTION PRESENTED**

Is defendant's citation to cases litigated upon Trust Fund Recovery Penalty assessments a misrepresentation of the issues in the instant case?

**DISCUSSION**

In frivolously citing Arnett v. United States, 889 F. Supp. 1424, 1430 (D. Kan. 1995) and Sylvester v. United States 978 F. Supp. 1186 (E.D. Wis. 1997), defendant's motion borders upon perpetrating a fraud upon the Court; both of the cited cases relate, as specified by defendant, to "actions taken during assessment of tax under 26 U.S.C. 6672", and "allegation that IRS incorrectly computed Section 6672 liability", and are completely irrelevant to the instant action. Even the third citation, Zolman v. IRS, 87 F. Supp. 2d 765 (W.D. Mich. 1999), is limited, by defendant's admission that this cited case was limited, specifying "mere assertion of improper assessment of tax liability, *without more*, is insufficient". A review of my Verified Amended Complaint shows that there is no allegation of "assessment of tax under 26 U.S.C. 6672" ..., "incorrectly computed" or otherwise, and that, in fact, much more than "mere assertion of improper assessment" is alleged in the instant case.

**QUESTION PRESENTED**

Is defendant's frivolous assertion that my Verified Amended Complaint alleges "non-collection activities" sufficient to deprive the Court of jurisdiction to conduct judicial review of the agency actions described in those Counts under the ADMINISTRATIVE PROCEDURE ACT?

## DISCUSSION

Defendant fails to challenge the Court's jurisdiction under §§ 704 and 706 of the ADMINISTRATIVE PROCEDURE ACT, 80 Stat. 392; 393, to determine whether officers or employees responsible for agency actions[11] subject of my Verified Amended Complaint, disregarded identified provisions of the INTERNAL REVENUE CODE and regulations promulgated thereunder. Defendant fails to challenge the Court's power, for those purposes, to review the agency record pursuant to the FEDERAL RECORDS ACT; 82 Stat. 1297, *et seq.*; and the NATIONAL ARCHIVES ACT, 90 Stat. 2723, *et seq.*

The allegations of administrative procedural failures in Counts 1 and 2; 3 through18; 28; and 29, whether or not actionable themselves for damages, provide a background for the Court to ultimately reach a finding as to whether officers or employees of IRS disregarded other provisions "in connection with collection".

Defendant's failure to challenge the Court's jurisdiction for judicial review concedes that jurisdiction, and allows the Court to consider background administrative failures in reaching its ultimate determination with respect to bases for damages.

Ultimately, counsel for the defendant admits "Plaintiff has alleged several counts that relate to collections: counts 20-26, 28-32, 34-39." (Def's Mem pg 10 ¶ 1) This admission by counsel undermines defendant's motion to dismiss. Indeed, counsel concedes eighteen Counts in my Verified Amended Complaint are actionable under 26 USC § 7433.

## QUESTION PRESENTED

Is defendant's assertion that some of the Counts alleged in my Verified Complaint lack factual support sufficient to pre-empt the discovery process prescribed in Fed.R. Civ. P. 26-37?

---

[11] "'Agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act;" 5 USC 551 (13).

## DISCUSSION

I re-assert that my Verified Amended Complaint meets the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in Conley v. Gibson, 355 U.S. 41,[12] and reiterated in Jones v. Bock (Nos. 05-7058 and 05-7142) __ U.S. _____ (January, 2007). To the extent that some Counts might require more than Fed.R.Civ.P. 8(a)'s "short and plain statement of the claim", I direct the Court's attention to Exhibit 1, page 44 of the Parallel Table of Authorities published by the Office of the Federal Register, in it's administration of the Federal Register Act, showing that no regulation has been issued under Title 26, Code of Federal Regulations, "...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1. All regulations in the Parallel Table identified as promulgated under section 6301 are found under Title 27, CFR, and pertain only to taxes imposed upon alcohol, tobacco, and firearms; matters not relevant to the case at bar.

## IV

## COUNSEL'S ANTI-INJUNCTION ACT ARGUMENT IS GROUNDLESS AND DESIGNED TO INTENTIONALLY MISLEAD THE COURT

Nowhere in my complaint is there any request to have the defendant, or its agency the IRS, enjoined from "…any further tax collection activities…" as counsel falsely asserts.

## QUESTION PRESENTED

Did defendant, by and with the active assistance of counsel intentionally mislead the Court by arguing against un-sought injunctive relief?

---

[12] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

## DISCUSSION

Defendant argues against an issue not found in my Verified Amended Complaint. Counsel's assertion that the relief sought therein can, or should, "somehow" be (mis)construed as a request for injunctive relief is absurd.

Plaintiff seeks an Order directing defendant's agency to take action; not refrain from taking action. This intentional misconstruction by counsel is an affront to the dignity of the Court. My request for relief is presented in plain language, and counsel's misconstruction is readily seen as intentional. Counsel's actions far exceed zealous representation. Indeed, counsel's feigned inability to comprehend even rudimentary language is easily seen as deceptive and unavailing.

## CONCLUSION

Defendant's motion fails on every ground upon which it putatively relies. Further, despite conceding the majority of my Verified Amended Complaint is actionable under 26 USC § 7433, defendant has demonstrated that it will employ intentionally misleading tactics and false assertions in an effort to move this Court. Based upon the foregoing, Plaintiff respectfully requests the Court issue an Order denying the United States' Motion to Dismiss in its entirety.

Dated: SEPT. 10, 2007

Respectfully submitted,

Phillip B. Shane

## CERTIFICATE OF SERVICE

I certify that I have served a true and complete copy of the forgoing Response to Motion to Dismiss on:

PAT S. GENIS
U.S. Department of Justice
P.O. Box 227
Washington D.C. 20044

Dated: SEPT. 10, 2007

By: [signature]
Phillip B. Shane

## CFR Index


26 U.S.C. (1986 I.R.C.)—Continued CFR

5364—5373 ....27 Part 24
5367 ....27 Parts 70, 252
5370—5371....27 Part 252
5370 ....27 Part 19
5373 ....27 Part 19
5381—5388 ....27 Part 24
5391—5392 ....27 Part 24
5401—5403 ....27 Part 25
5401....27 Part 252
5411—5417 ....27 Part 25
5415 ....27 Parts 70, 252
5501—5505 ....27 Part 19
5504 ....27 Part 70
5511....27 Parts 18, 24
5551—5555 ....27 Part 19
5551—5552 ....27 Parts 24—25, 252
5552....27 Parts 18, 20, 22
5555—5556 ....27 Part 25
5555....27 Parts 20, 22, 26—27, 31, 70, 194, 251, 252
5559 ....27 Part 19
5561—5562 ....27 Part 19
5601....27 Parts 19, 29
5607 ....27 Part 20
5612 ....27 Part 19
5613 ....27 Part 31
5615 ....27 Part 29
5661—5662 ....27 Part 24
5671 ....27 Part 25
5673 ....27 Part 25
5681....27 Part 31, 194
5682 ....27 Part 19
5684....27 Parts 24—25, 70
5687 ....27 Part 29
5688....19 Part 162
5691 ....27 Part 31
5701....27 Parts 41, 44, 270
5703—5705....27 Parts 41, 44, 45, 270
5704 ....27 Part 46
5707....27 Part 270
5708....27 Parts 41, 46, 296
5711—5713 ....27 Parts 44, 270
5712—5713....27 Parts 41, 71
5721—5723....27 Parts 41, 44, 270
5723 ....27 Part 45
5731 ....27 Parts 44, 270
5741....27 Parts 41, 44, 45, 70, 270
5751....27 Parts 44—46, 270, 296
5753....26 Part 127
27 Part 270
5754....27 Parts 41, 44, 46
5761—5763 ....27 Parts 41, 46, 270, 296
5761—5762....27 Part 270
5761 ....27 Part 70
5762—5763 ....27 Part 45
5801 et seq....27 Part 179
5802 ....27 Part 70
6001 ....26 Parts 1, 31, 55, 156
27 Parts 19, 26, 31, 46, 53, 296
6011....26 Parts 31, 40, 55, 156, 301
27 Parts 17, 25, 31, 53, 73
6020....27 Parts 53, 70
6021....27 Parts 53, 70
6031....26 Part 1
6035....26 Part 1
6036....26 Part 301

26 U.S.C. (1986 I.R.C.)—Continued CFR

6038—6038B ....26 Part 1
6041....26 Part 1
6043....26 Part 1
6045....26 Parts 1, 5f
6046A ....26 Part 1
6047 ....26 Part 35
6049....26 Part 1
6050E ....26 Part 1
6050H—6050I-1....26 Part 1
6050K ....26 Part 1
6050M....26 Parts 1, 301
6050P ....26 Part 1
6050S....26 Part 1
6051 ....26 Part 31
6056 ....27 Part 22
6060....26 Part 1
6061....26 Parts 1, 156, 301
27 Parts 22, 25, 31, 44, 53, 73, 270
6064 ....27 Part 70
6065....26 Part 1
27 Parts 17—20, 22, 24, 25, 31, 44, 252, 270
6071....26 Parts 31, 40, 55, 154, 156
27 Parts 31, 53
6081 ....26 Parts 1, 31, 301
27 Part 53
6090 ....26 Part 43
6091 ....26 Parts 40, 44, 46, 55, 156
27 Parts 17, 24, 25, 31, 53, 194
6101—6104 ....27 Part 53
6101 ....26 Part 40
6102 ....27 Part 70
6103....20 Parts 401, 402
26 Parts 301, 602
42 Part 401
6104....26 Part 301
6109 ....26 Parts 40, 150, 301
27 Parts 17, 19, 22, 24, 25, 31, 53, 194, 270
6111....26 Part 301
6112....26 Part 301
6114....26 Part 301
6151 ....27 Parts 17, 22, 25, 31, 44, 53, 270
6155....27 Parts 53, 70
6157 ....26 Part 31
6159 ....27 Part 70
6161....26 Part 156
27 Part 53
6201 ....27 Part 70
6203—6204 ....27 Part 70
6205 ....26 Part 31
6223....26 Part 301
6230....26 Parts 1, 301
6231....26 Part 301
6232 ....26 Parts 41, 150
6233....26 Part 301
6241....26 Part 301
6245....26 Part 301
6301—6303 ....27 Part 53
6301—6302....27 Parts 24—26, 41, 270
6301 ....27 Part 70
6302 ....26 Parts 1, 20, 25, 31, 40
27 Parts 19, 27, 251
31 Parts 203, 214
6303 ....27 Part 70
6311....26 Part 301




**Exhibit # 1**