RECEIVED

SEP 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

Phillip B. Shane,

                Plaintiff,

v.

UNITED STATES,

                Defendant.

Case No.: 1:07-cv-577 (RBW)

**Response to Motion to Dismiss**

## RESPONSE TO MOTION TO DISMISS
## INTRODUCTION

Defendant's assertion that this Court lacks subject-matter jurisdiction in the instant matter on the basis of the frivolous assertion that I "failed to state an unauthorized collection claim" is without merit.

I, Phillip B. Shane, Plaintiff, hereby respond to the United States' Motion to Dismiss my Verified Amended Complaint:

At the outset, it should be noted that while counsel for the defendant attempts to paint my amended complaint as a refund suit by using the word "refund" no fewer than fifteen (15) times in her memorandum. However, counsel also concedes that my amended complaint is in fact a damages action brought under 26 U.S.C. § 7433. Indeed, in the second sentence of counsel's memorandum she asserts, "Plaintiff seeks damages for alleged unauthorized collection activities." This concession by defendant is contrary to the majority of argument counsel presents in her frivolous and unconvincing memorandum.

Defendant again concedes "The amended complaint seeks damages under 26 U.S.C. § 7433." (Def.'s Mem. pg 2 at #2)

## QUESTION PRESENTED

Was counsel's "refund suit" construction of the Verified Complaint - in the absence of a venue assertion - a willful mischaracterization intended to mislead the Court?

## DISCUSSION

Under the "refund suit" statute, 26 U.S.C. § 7422, and 28 U.S.C. § 1402(a), venue for a refund suit is proper only in the judicial district in which the plaintiff resides.  Plaintiff contends that defendant should be estopped from "converting" Plaintiff's damages claim (clearly intended) into a refund claim (clearly unintended) in the absence of a venue challenge.

Further, Plaintiff asserts that the omission of a venue challenge indicates defendant's awareness of venue for such a suit.  Plaintiff contends that, absent a venue challenge, defendant's Motion to Dismiss on "refund" was little more than a dilatory tactic, intended to mislead the Court, through prejudice, into a dismissal on any grounds.

Accordingly, defendant's arguments regarding a non-existent "refund" suit must fail as intentionally misleading and dilatory. Clearly, counsel has expressed knowledge and conceded that my amended complaint is not a "refund" suit. As such, counsel's arguments regarding any alleged failure to serve the IRS are irrelevant and likewise intentionally misleading.

Counsel has conceded the fact that my amended complaint is a damages action under 26 U.S.C. § 7433, and not a "refund" suit. Therefore, counsel is fully aware that the IRS cannot legally be a party to the instant action and that service upon IRS is not warranted under § 7433.

As such, counsel fails to present any argument relevant to any of the claims presented in my Verified Amended Complaint until page six (6) of her memorandum.

## II

## COUNSEL'S EXHAUSTION OF ADMINISTRATIVE REMEDIES ARGUMENT

Counsel incorrectly asserts that this Court does not have jurisdiction over plaintiff's claim

for damages under 26 U.S.C. § 7433 because plaintiff has failed to demonstrate that he filed an

administrative claim for damages with the Internal Revenue Service.

## QUESTION PRESENTED

Did IRS fail to make any substantive "administrative remedies available" under 102

Stat. 3747 (TBOR I), 110 Stat. 1465 (TBOR II), or 112 Stat. 730(TBOR III), aka IRC § 7433?

## DISCUSSION

The history of "26 CFR 301.7433-1" is its own best evidence that IRS refused to even establish

procedures for four years after the right to bring an action was granted by Congress.[1] It is evident

that "26 CFR13301.7433-1" currently imposes a prohibitive provision omitted by Congress

(which defendant vigorously denies).  Further review of Official documents of the Office of the

Federal Register establish that defendant's response that "26 CFR 301.7433-1" lacks the "certain

substantive characteristics" and "certain procedural requisites" <u>Chrysler v. Brown</u>, 441 U.S. 281,

at 301, of "a substantive rule--or a "legislative-type rule," <u>Id</u>., 302.

Neither the Secretary of the Treasury nor any authorized delegate made *any* <u>substantive</u>

"administrative remedies available" <u>IRC § 7433</u> "affecting individual rights and obligations"

<u>Morton v. Ruiz,</u> 415 U.S. 199, at 232, under any incarnation of Internal Revenue Code section

7433.

---

[1] Timing was a particular factor considered in Batterton v. Francis, 432 U.S. at 425 n. 9, and quoted in Chrysler v. Brown, 441 U.S. 281, at 315, infra, in differentiating "substantive" and "interpretative (interpretive)" regulations. The "timing" of T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003, is discussed below.

As the Honorable Rehnquist, J., stated in Chrysler v. Brown, 441 U.S. at 301,302,

"In order for a regulation to have the "force and effect of law," it must have
certain substantive characteristics and be the product of certain procedural
requisites. The distinction among agency regulations ...is that between
"substantive rules" on the one hand and "interpretative rules, general statements of
policy, or rules of agency organization, procedure, or practice" on the other. ***
But in Morton v. Ruiz, 415 U.S.199, 94 S. Ct. 1055, 39 L.Ed.2d 270 (1974), we
**1718 noted a characteristic inherent in the concept of a "substantive rule." We
described a substantive rule--or a "legislative-type rule," id., at 236, 94 S. Ct.,
at1074-as one "affecting individual rights and obligations." Id., at 232, 94S. Ct., at
1073.
This characteristic is an important touchstone for distinguishing those rules that
maybe "binding" or have the "force of law." Id., at 235, 236,94 S.Ct., at 1074."

The Chrysler Court continued, at 303:[2]

"Likewise, the promulgation of these regulations must conform with any
procedural requirements imposed by Congress. Morton v. Ruiz, supra, at232. For
agency discretion is limited not only by substantive, statutory grants of authority,
but also by the procedural requirements which "assure fairness and mature
consideration of rules of general application." NLRB v. Wyman-Gordon Co., 394
U.S. 759, 764 (1969)." (Emph. added)

"[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D.

9050, 68 FR 14320, Mar. 25, 2003]"[3] lacks the "complete citation of the authority under which

the section is issued" required by 1 CFR 21.40, "including-(a)General or specific authority

delegated by statute; and (b)Executive delegations, if any, necessary to link the statutory

authority to the issuing agency", one of the Agency Responsibilities published in 1 CFR 21.41.

The published "26 CFR 301.7433-1"contains neither a citation to 102 Stat. 3747 (TBOR

I), nor to 110 Stat. 1465 (TBOR II),nor to 112 Stat. 730 (TBOR III), *aka* IRC § 7433, in any

---

[2] Within the above analysis, footnote 31 included the commentary:

"In contrast [the Attorney General's Manual] suggests that "interpretive rules" and "general
statements of policy" do not have the force and effect of law. Interpretive rules are issued by
an agency to advise the public of the agency's construction of the statutes and rules which it
administers." Ibid. General statements of policy are "statements issued by an agency to advise
the public prospectively of the manner in which the agency proposes to exercise a
discretionary power."

[3] This series of Treasury Decisions purporting to "promulgate" and "amend" 26 CFR 301.7433 is quoted directly
therefrom, including the brackets.

incarnation, as the source of authority, as required by the Office of the Federal Register in its administration of the Federal Register Act, at 1 CFR 21.43(a), and 1 CFR 21.52; nor does it contain a citation to any substantive authority, as exemplified in 1 CFR 21.45, and 1 CFR 21.53.

Based upon the standard established by <u>Chrysler v. Brown</u>, *supra*, <u>Morton v. Ruiz</u>, *supra*, and by the Office of the Federal Register publishing the Code of Federal Regulations[4] in its administration of the Federal Register Act, "26 CFR 301.7433-1" is nothing more than an "interpretative regulation" not "affecting individual rights and obligations".

In deciding upon the distinction between "substantive" and "interpretative (interpretive)" regulations, the Chrysler Court pointed out, at 441 U.S. 315, that the regulation at issue therein established, *inter alia*:

> " 'As the changes made by this document relate solely to interpretive rules, general statements of policy, and to rules of agency procedure and practice, neither notice of proposed rule making nor public participation therein is required by 5 U.S.C. 553. Since the changes made by this document either relieve restrictions or are interpretative rules, no delay ineffective date is required by 5 [441 U.S. 315] U.S.C. 553(d). These rules shall therefore be effective immediately.' "

<u>Chrysler v. Brown</u> followed, at 441 U.S. 315, its own precedent, set 2 years previously:

"As we observed in Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct.2399, 2405 n. 9, 53 L.Ed.2d 448 (1977):
> "[A] court is not required to give effect to an interpretative regulation. Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." "We need not decide whether these regulations are properly characterized as "interpretative rules." It is enough that such regulations are not properly promulgated as substantive rules, and therefore not the product of procedures which Congress prescribed as necessary prerequisites to giving a regulation the binding effect of law."

---

[4] ("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1).

The published "26 CFR 301.7433-1", containing only the bracketed reference"[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", contains the statement, in part, that:

> "It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations..."

Section 4 of the Administrative Procedure Act, at 5 U.S.C. § 553(b), provides for ONLY two exceptions to the requirement that "General notice of proposed rule making shall be published in the Federal Register":

> "*****
> "Except when notice or hearing is required by statute, this subsection does not apply –
>> "(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
>> "(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued)that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."

In the clear absence of an incorporated "finding and a brief statement of reasons therefor" as specified in 5 USC § 553(b)(3)(B), the assertion that "section 553(b) of the Administrative Procedure Act...does not apply to the regulations...", "26 CFR301.7433-1" is its own best evidence that it is "an interpretative regulation" Chrysler,441 U.S. 281 at 315; Batterton v. Francis, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232, that "[A] court is not required to give effect to" Batterton v. Francis, *supra*.

As referenced in footnote 1, supra, Batterton v. Francis, *supra*, identified "timing" as a factor in determining whether a regulation is "substantive" or "interpretive"("interpretative"). Treasury Decision 8392 was not promulgated until January 30, 1992, and not published, 57 FR 5931, until February 18, 1992; nearly three (3) years after Congress enacted TBOR I.

Treasury Decision 9050 was not promulgated until March 5, 2003, effective until March

25, 2003, more than four years and nine months after Congress' enactment of TBOR III. In fact,

the regulation was not even proposed until March 5, 2002. Federal Register: Volume 67,

Number 43, Page 9929-9934.[5]

This period of "unavailability" of administrative remedy, i.e., the "timing" discussed in

Batterton, *supra*, is a factor that this Court should consider in respect of the March 25, 2003

version of the regulation.

AVAILABILITY OF REMEDY

A comprehensive history of IRC § 7433 was published by the American Bar Association,

and Plaintiff respectfully directs the Court's attention to what the Bar had to say about the re-

amendment:

> "[F]ew pro se plaintiffs have actual notice of the process established by
> Treasury Regulation section 301.7433-1. Congress should understand many
> people's distrust of the ability of the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual notice of the

process" directly addresses "availability" of remedy, as shown by IRS' published policy

regarding return of amounts unlawfully collected. Internal Revenue Service Policy P-5-36,

published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts

unlawfully collected. P-5-36 states:

"(1) Returning money wrongfully collected: This Policy Statement has been revoked."

---

[5] In respect of Congress' removal of the jurisdictional prohibition in TBOR II (1996), Plaintiff has been unable to
find an amended final regulation, but was able to find the "Notice of proposed rulemaking" discussing TBOR II.
The "Notice of proposed rulemaking" clearly shows that IRS was aware of Congress' removal of the jurisdictional
prohibition. It must be noted that Treasury Decision 9050, as published, 68 FR 14320, purported to amend ONLY
Treasury Decision 8392 (the 1992 regulation) indicating that no "final" regulation implementing the 1996 Act
(TBOR II) ever became effective. "Remedy", under TBOR II, was never made "available".

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and TBOR III (RRA '98, § 3102) are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at University of California, Berkeley,

> "The IRS's comparative advantage is using random terror to elicit
> Voluntary compliance with the tax code...".

Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole. Once again, the Congressional "key" is availability of the administrative remedy. As a matter of judicial precedent, Chrysler v. Brown, supra, Morton v. Ruiz, supra, and the procedural requirements imposed by the Office of the Federal Register publishing the Code of Federal Regulations[6] in its administration of the Federal Register Act, applied to Treasury Decisions 8392 and 9050 are and always were "an interpretative regulation "Chrysler, 441 U.S. 281 at 315; Batterton v. Francis, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232, that "[A]court is not required to give effect to" Batterton v. Francis, supra.

Alternatively, if the Court makes a factual determination (province of the jury) that an administrative remedy is effectively unavailable, it need not be pursued. As established by Treasury Decisions 8392 and 9050, defendant's agency refused to even establish procedures for

---

[6] ("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR8.1).

four years after the right to bring an action was initially granted by Congress. Administrative remedy, arguably available in an interpretative sense, is effectively unavailable in substance, as evidenced by TIGTA reports, mandated in RRA '98, section 1102, failing to show a single instance of IRS granting an administrative claim for damages.

Agency expertise is another factor that Batterton v. Francis, *supra*, identified as worthy of consideration. Lack of specific attention to the statutory authorization was a factor in the Supreme Court's pronouncement in *Skidmore v. Swift & Co.*, 323 U.S. 134,140 (1944), quoted in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 n. 5(1978), and cited in *SEC v. Sloan*, 436 U.S. 103 (1978), further specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *SEC v. Sloan*, 436 U.S. 103, 117-118.

Treasury Decision 9050 itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness...in its consideration" (Sloan). In Treasury Decision 9050's subsection (a), paragraph (1) thereof changes, "reckless or intentional actions" to "reckless or international actions..."(emphasis added). Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102; the procedures therein fail to conform to the law, and the regulation fails "all those factors which give it power to persuade." *SEC v. Sloan*, 436 U.S. 103, 117-118. Defendant's "exhaustion" argument relies on a substantive regulation that does not exist and, therefore, fails in its entirety as unsupported by law.

## III

## COUNSEL'S FAILURE TO STATE A CLAIM ARGUMENT FAILS

## QUESTION PRESENTED

Is defendant asking the Court to impose a "heightened pleading standard" to misdirect the Court toward dismissal?

## DISCUSSION

Defendant initially asserts that "Plaintiff's amended complaint is legally insufficient because it fails to provide the necessary factual detail to state a claim, and should be dismissed under Fed.R.Civ.P. 12(b)(6)." (Def's Mem pg 8 ¶ 2)

However, defendant, immediately thereafter, acknowledges that "A complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)."

I assert that my Verified Amended Complaint meets the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in *Conley v. Gibson*, 355 U.S. 41[7] and reiterated in *Jones v. Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____ (January, 2007).

In *Jones v Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____, (Argued: October 30, 2006 -- Decided: January 22, 2007), the Honorable Roberts, C.J., opined that:

> "Courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163,"[8]

and,

> "...such a result 'must be obtained by amending the Federal Rules, and not by judicial interpretation.' Leatherman, supra, at 168. Pp. 10-16."

---

[7] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

[8] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163 Held: A federal court may not apply a "heightened pleading standard" -- more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)

Plaintiff asserts that the Verified Amended Complaint met the "notice pleading"
Requirements set forth in Fed. R. Civ. P. 8(a) as interpreted in *Conley v. Gibson* 355 U.S. 41 and
reiterated in Jones v. Bock (Nos. 05-7058 and 05-7142) __ U.S. ____8(January, 2007), and that
defendant's Motion to Dismiss, insofar as it asserted "failure to state a claim", is premature, and
an attempt to pre-empt the jury's authority as the "proper trier" of the contested "essential
element" of exhaustion of "*administrative remedies available* " as described in IRC § 7433(d)

7433(d)'s language - "unless the court determines" - in the common English to which
*Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id., 861, calls for a determination
of fact; clearly within the province of the jury. *Arbaugh*, 1240; *Reeves*. Thus, motion to dismiss
on grounds of "failure to state a claim" can be, and, based upon the Congressional language, is,
more properly brought after the Court has had the opportunity to make a factual determination
with respect to exhaustion of available administrative remedies.

Defendant's motion, devoid of the usual, if obsolete, attempts to avoid litigating damages
through unwarranted reliance upon an internal statement of policy[9], is a dilatory tactic, intended
to needlessly increase the cost of this litigation; insofar as it asserts "failure to state a claim", it is
nothing more than an attempt to have the Court to impose a "heightened pleading standard", by
attempting to require "pre-disclosure", without the parameters of Fed.R.Civ.P. 26-37.

Defendant's lengthy Memorandum in Support has certainly shown that my Verified
Amended Complaint "gives the defendant fair notice of the claim" contained therein,[10] as
described in  Fed.R.Civ.P. 8(a).  Even if defendant's frivolous assertion that something more
than the Rule's "short and plain statement of the claim" were found to have a basis, as a pro se

---

[9] See: Chrysler v. Brown, 441 U.S. 281, at 301, 302; Morton v. Ruiz, 415 U.S. 199, at 236; Batterton v. Francis, 432
U.S. 416, 425 n. 9; compare:  TREASURY DIRECTIVE 28-01 and TREASURY DIRECTIVE 25-03.

[10] It appears as if defendant has already admitted that at least 17 of the counts are actionable under 26 USC § 7433.

litigant, my pleadings should be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and I should be allowed to amend, to cure the asserted defect, if any.

## QUESTION PRESENTED

Is defendant's citation to cases litigated upon Trust Fund Recovery Penalty assessments a misrepresentation of the issues in the instant case?

## DISCUSSION

In frivolously citing Arnett v. United States, 889 F. Supp. 1424, 1430 (D. Kan. 1995) and Sylvester v. United States 978 F. Supp. 1186 (E.D. Wis. 1997), defendant's motion borders upon perpetrating a fraud upon the Court; both of the cited cases relate, as specified by defendant, to "actions taken during assessment of tax under 26 U.S.C. 6672", and "allegation that IRS incorrectly computed Section 6672 liability", and are completely irrelevant to the instant action. Even the third citation, Zolman v. IRS, 87 F. Supp. 2d 765 (W.D. Mich. 1999), is limited, by defendant's admission that this cited case was limited, specifying "mere assertion of improper assessment of tax liability, *without more*, is insufficient". A review of my Verified Amended Complaint shows that there is no allegation of "assessment of tax under 26 U.S.C. 6672" ..., "incorrectly computed" or otherwise, and that, in fact, much more than "mere assertion of improper assessment" is alleged in the instant case.

## QUESTION PRESENTED

Is defendant's frivolous assertion that my Verified Amended Complaint alleges "non-collection activities" sufficient to deprive the Court of jurisdiction to conduct judicial review of the agency actions described in those Counts under the ADMINISTRATIVE PROCEDURE ACT?

## DISCUSSION

Defendant fails to challenge the Court's jurisdiction under §§ 704 and 706 of the
ADMINISTRATIVE PROCEDURE ACT, 80 Stat. 392; 393, to determine whether officers or
employees responsible for agency actions[11] subject of my Verified Amended Complaint,
disregarded identified provisions of the INTERNAL REVENUE CODE and regulations
promulgated thereunder. Defendant fails to challenge the Court's power, for those purposes, to
review the agency record pursuant to the FEDERAL RECORDS ACT; 82 Stat. 1297, *et seq*.; and
the NATIONAL ARCHIVES ACT, 90 Stat. 2723, *et seq*.

The allegations of administrative procedural failures in Counts 1 and 2; 3 through18; 28;
and 29, whether or not actionable themselves for damages, provide a background for the Court to
ultimately reach a finding as to whether officers or employees of IRS disregarded other
provisions "in connection with collection".

Defendant's failure to challenge the Court's jurisdiction for judicial review concedes
that jurisdiction, and allows the Court to consider background administrative failures in reaching
its ultimate determination with respect to bases for damages.

Ultimately, counsel for the defendant admits "Plaintiff has alleged several counts that
relate to collections: counts 20-26, 28-32, 34-39." (Def's Mem pg 10 ¶ 1) This admission by
counsel undermines defendant's motion to dismiss. Indeed, counsel concedes eighteen Counts in
my Verified Amended Complaint are actionable under 26 USC § 7433.

## QUESTION PRESENTED

Is defendant's assertion that some of the Counts alleged in my Verified Complaint lack
factual support sufficient to pre-empt the discovery process prescribed in Fed.R. Civ. P. 26-37?

---

[11] "'Agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent
or denial thereof, or failure to act;" 5 USC 551 (13).

## DISCUSSION

I re-assert that my Verified Amended Complaint meets the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in Conley v. Gibson, 355 U.S. 41,12 and reiterated in Jones v. Bock (Nos. 05-7058 and 05-7142) __ U.S. _____ (January, 2007). To the extent that some Counts might require more than Fed.R.Civ.P. 8(a)'s "short and plain statement of the claim", I direct the Court's attention to Exhibit 1, page 44 of the Parallel Table of Authorities published by the Office of the Federal Register, in it's administration of the Federal Register Act, showing that no regulation has been issued under Title 26, Code of Federal Regulations, "...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1. All regulations in the Parallel Table identified as promulgated under section 6301 are found under Title 27, CFR, and pertain only to taxes imposed upon alcohol, tobacco, and firearms; matters not relevant to the case at bar.

## IV

## COUNSEL'S ANTI-INJUNCTION ACT ARGUMENT IS GROUNDLESS AND DESIGNED TO INTENTIONALLY MISLEAD THE COURT

Nowhere in my complaint is there any request to have the defendant, or its agency the IRS, enjoined from "...any further tax collection activities..." as counsel falsely asserts.

## QUESTION PRESENTED

Did defendant, by and with the active assistance of counsel intentionally mislead the Court by arguing against un-sought injunctive relief?

---

[12] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

## DISCUSSION

Defendant argues against an issue not found in my Verified Amended Complaint. Counsel's assertion that the relief sought therein can, or should, "somehow" be (mis)construed as a request for injunctive relief is absurd.

Plaintiff seeks an Order directing defendant's agency to take action; not refrain from taking action. This intentional misconstruction by counsel is an affront to the dignity of the Court. My request for relief is presented in plain language, and counsel's misconstruction is readily seen as intentional. Counsel's actions far exceed zealous representation. Indeed, counsel's feigned inability to comprehend even rudimentary language is easily seen as deceptive and unavailing.

## CONCLUSION

Defendant's motion fails on every ground upon which it putatively relies. Further, despite conceding the majority of my Verified Amended Complaint is actionable under 26 USC § 7433, defendant has demonstrated that it will employ intentionally misleading tactics and false assertions in an effort to move this Court. Based upon the foregoing, Plaintiff respectfully requests the Court issue an Order denying the United States' Motion to Dismiss in its entirety.

Dated: _Sept 10_, 2007

Respectfully submitted,

Phillip B. Shane

CERTIFICATE OF SERVICE

I certify that I have served a true and complete copy of the forgoing Response to Motion to Dismiss on:

PAT S. GENIS
U.S. Department of Justice
P.O. Box 227
Washington D.C. 20044

Dated: $Sept$ $10$ , 2007

By: _____
Phillip B. Shane

Shane v UNITED STATES                           Response to Motion to Dismiss

## CFR Index

| 26 U.S.C. (1986 I.R.C.)—Continued | CFR |
|---|---|
| 5364—5373 | 27 Part 24 |
| 5367 | 27 Parts 70, 252 |
| 5370—5371 | 27 Part 252 |
| 5370 | 27 Part 19 |
| 5373 | 27 Part 19 |
| 5381—5388 | 27 Part 24 |
| 5391—5392 | 27 Part 24 |
| 5401—5403 | 27 Part 25 |
| 5401 | 27 Part 252 |
| 5411—5417 | 27 Part 25 |
| 5415 | 27 Parts 70, 252 |
| 5501—5505 | 27 Part 19 |
| 5504 | 27 Part 70 |
| 5511 | 27 Parts 18, 24 |
| 5551—5555 | 27 Part 19 |
| 5551—5552 | 27 Parts 24—25, 252 |
| 5552 | 27 Parts 18, 20, 22 |
| 5555—5556 | 27 Part 25 |
| 5555 | 27 Parts 20, 22, 26—27, 31, 70, 194, 251, 252 |
| 5559 | 27 Part 19 |
| 5561—5562 | 27 Part 19 |
| 5601 | 27 Parts 19, 29 |
| 5607 | 27 Part 20 |
| 5612 | 27 Part 19 |
| 5613 | 27 Part 19 |
| 5615 | 27 Part 29 |
| 5661—5662 | 27 Part 24 |
| 5671 | 27 Part 25 |
| 5673 | 27 Part 25 |
| 5681 | 27 Parts 31, 194 |
| 5682 | 27 Part 19 |
| 5684 | 27 Parts 24—25, 70 |
| 5687 | 27 Part 29 |
| 5688 | 19 Part 162 |
| 5691 | 27 Part 31 |
| 5701 | 27 Parts 41, 44, 270 |
| 5703—5705 | 27 Parts 41, 44, 45, 270 |
| 5704 | 27 Part 46 |
| 5707 | 27 Part 270 |
| 5708 | 27 Parts 41, 46, 296 |
| 5711—5713 | 27 Parts 44, 270 |
| 5712—5713 | 27 Parts 41, 71 |
| 5721—5723 | 27 Parts 41, 44, 270 |
| 5723 | 27 Part 45 |
| 5731 | 27 Parts 44, 270 |
| 5741 | 27 Parts 41, 44, 45, 70, 270 |
| 5751 | 27 Parts 44—46, 270, 296 |
| 5753 | 26 Part 127 |
|  | 27 Part 270 |
| 5754 | 27 Parts 41, 44, 46 |
| 5761—5763 | 27 Parts 41, 46, 270, 296 |
| 5761—5762 | 27 Part 270 |
| 5761 | 27 Part 70 |
| 5762—5763 | 27 Part 45 |
| 5801 et seq | 27 Part 179 |
| 5802 | 27 Part 70 |
| 6001 | 26 Parts 1, 31, 55, 156 |
|  | 27 Parts 19, 26, 31, 46, 53, 296 |
| 6011 | 26 Parts 31, 40, 55, 156, 301 |
|  | 27 Parts 17, 25, 31, 53, 73 |
| 6020 | 27 Parts 53, 70 |
| 6021 | 27 Parts 53, 70 |
| 6031 | 26 Part 1 |
| 6035 | 26 Part 1 |
| 6036 | 26 Part 301 |

| 26 U.S.C. (1986 I.R.C.)—Continued | CFR |
|---|---|
| 6038—6038B | 26 Part 1 |
| 6041 | 26 Part 1 |
| 6043 | 26 Part 1 |
| 6045 | 26 Parts 1, 5f |
| 6046A | 26 Part 1 |
| 6047 | 26 Part 35 |
| 6049 | 26 Part 1 |
| 6050E | 26 Part 1 |
| 6050H—6050I—1 | 26 Part 1 |
| 6050K | 26 Part 1 |
| 6050M | 26 Parts 1, 301 |
| 6050P | 26 Part 1 |
| 6050S | 26 Part 1 |
| 6051 | 26 Part 31 |
| 6056 | 27 Part 22 |
| 6060 | 26 Part 1 |
| 6061 | 26 Parts 1, 156, 301 |
|  | 27 Parts 22, 25, 31, 44, 53, 73, 270 |
| 6064 | 27 Part 70 |
| 6065 | 26 Part 1 |
|  | 27 Parts 17—20, 22, 24, 25, 31, 44, 252, 270 |
| 6071 | 26 Parts 31, 40, 55, 154, 156 |
|  | 27 Parts 31, 53 |
| 6081 | 26 Parts 1, 31, 301 |
|  | 27 Part 53 |
| 6090 | 26 Part 43 |
| 6091 | 26 Parts 40, 44, 46, 55, 156 |
|  | 27 Parts 17, 24, 25, 31, 53, 194 |
| 6101—6104 | 27 Part 53 |
| 6101 | 26 Part 40 |
| 6102 | 27 Part 70 |
| 6103 | 20 Parts 401, 602 |
|  | 26 Parts 301, 602 |
|  | 42 Part 401 |
| 6104 | 26 Part 301 |
| 6109 | 26 Parts 40, 150, 301 |
|  | 27 Parts 17, 19, 22, 24, 25, 31, 53, 194, 270 |
| 6111 | 26 Part 301 |
| 6112 | 26 Part 301 |
| 6114 | 26 Part 301 |
| 6151 | 27 Parts 17, 22, 25, 31, 44, 53, 270 |
| 6155 | 27 Parts 53, 70 |
| 6157 | 26 Part 31 |
| 6159 | 27 Part 70 |
| 6161 | 26 Part 156 |
|  | 27 Part 53 |
| 6201 | 27 Part 70 |
| 6203—6204 | 27 Part 70 |
| 6205 | 26 Part 31 |
| 6223 | 26 Part 301 |
| 6230 | 26 Parts 1, 301 |
| 6231 | 26 Part 301 |
| 6232 | 26 Parts 41, 150 |
| 6233 | 26 Part 301 |
| 6241 | 26 Part 301 |
| 6245 | 26 Part 301 |
| 6301—6303 | 27 Part 53 |
| 6301—6302 | 27 Parts 24—26, 41, 270 |
| 6301 | 27 Part 70 |
| 6302 | 26 Parts 1, 20, 25, 31, 40 |
|  | 27 Parts 19, 27, 251 |
|  | 31 Parts 203, 214 |
| 6303 | 27 Part 70 |
| 6311 | 26 Part 301 |

**Exhibit # 1**

Phillip B. Shane
P.O. Box 347
Dunsmuir, CA 96025
September 16, 2007

Clerk's Office
United States District Court
For the District of Columbia
U. S. Courthouse
333 Constitution Avenue N.W.
Washington, D.C. 20001

Re:    Response to Motion To Dismiss
       Civil Action No. 07-577 RBW

This letter concerns 07-cv-577 RBW in regards to my response to the Department of Justice's Motion to Dismiss and is provided as recommended by the personnel I talked to in the clerk's office this morning at 7:30 am PST. And is provided as a means of protecting my position in this civil action.

1. My response to DOJ's Motion to Dismiss was mailed at Mount Shasta California at 9:32 AM on September 10th (Copy of USPS confirmation enclosed). The copy was sent Registered Mail, Priority Mail. As of this morning the USPS's track and confirm system shows that the document has yet to be received in Washington. I contacted the Mount Shasta Post Office and they are trying to determine why the item has not been delivered. Item number is RC04 1968 156U S. The Response order from the clerk's office was postmarked Sept. 4th and received by me on Sept. 7th (Copy Enclosed).

2. A copy of my response was also sent to DOJ at the same time, certified mail with return receipt requested. (Copy of USPS paid receipt enclosed). The item was received in Washington D.C. on September 14th (Copy of USPS track and Confirm record enclosed).

3. Please consider this situation when the item is received and docketed.

4. For record, I have enclosed a copy of the original Document sent on September 10th.

Respectfully

Phillip B. Shane

Enclosures as stated above

**Registered No.** 900417601500

| Reg. Fee | $9.50 |
|---|---|

| Handling Charge | $0.00 | Return Receipt | 1.15 |
|---|---|---|---|
| Postage | $4.60 | Restricted Delivery | 0.00 |

Received by: _____

Customer Must Declare Full Value $ $0.00

[ ] With Postal Insurance
[ ] Without Postal Insurance

**Date Stamp**

MOUNT SHASTA CA 96067
USPS
09/10/07

Deposited amount up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

**To Be Completed By Post Office**

OFFICIAL USE

**To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed**

FROM:
Phillip Shane
P.O. Box 347
Dunsmuir, CA 96025

TO:
Clerk's Office
U.S. Court House
333 Constitution Ave NW
Washington, DC 20001

PS Form **3806,**    **Receipt for Registered Mail**    Copy 1 - Customer
May 2004 (7530-02-000-9051)    (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

Customer Copy

```
              Mount Shasta Post Office
              Mount Shasta, California
                     9606679998
              05667600607 -0097
09/10/2007     09:35:40 AM    (800) 275-8777

               Sales Receipt
Product                 Qty    Unit    Final
Description                    Price   Price
                               Sale
WASHINGTON DC 20001
Zone-8 Priority Mail
7.40 oz.                               $4.60
                  Return Rcpt (Green Card)
                               $2.15   $9.50
Registered
Insured Value :        $0.00
Article Value :        $0.00
Label #:
RC041968156US
========
Issue PVI:                            $16.25

WASHINGTON DC 20044
Zone-8 First-Class
Large Env
3.10 oz.                               $1.31
                  Return Rcpt (Green Card)
                               $2.15   $2.65
Certified
Label #:
70070220000435542468
========
Issue PVI:                             $6.11

Total:                                $22.36

Paid by:
Cash                        $30.00
Change Due:                  -$7.64

Order stamps at USPS.com/shop or call
1-800-Stamp24. Go to USPS.com/clicknship
to print shipping labels with postage.
For other information call 1-800-ASK-USPS.

Bill#: 1000302663256
Clerk: 02
All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
         HELP US SERVE YOU BETTER

      Go to: http://gx.gallup.com/pos

        TELL US ABOUT YOUR RECENT
            POSTAL EXPERIENCE
         YOUR OPINION COUNTS
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
```



U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | $1.31 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

Postmark Here
SEP 1 0 2007
UNISHASTA, CA 96067
USPS

Sent To
Pat R. Geldis, US. DoJ

Street, Apt. No.; or PO Box No.
P.o. Box 227

City, State, ZIP+4
Washington D.C. 20044

PS Form 3800, August 2006          See Reverse for Instructions

7007 0220 0000 3654 2748

 UNITED STATES POSTAL SERVICE®

Home | Help | Sign In

Track & Confirm FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **RC04 1968 156U S**
Status: **Acceptance**

Your item was accepted at 9:32 AM on September 10, 2007 in MOUNT SHASTA, CA 96067. Information, if available, is updated every evening. Please check again later.

**Track & Confirm**

Enter Label/Receipt Number.

Go >

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. Go >

POSTAL INSPECTORS
Preserving the Trust

site map contact us government services jobs National & Premier Accounts

Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use Privacy Policy

**UNITED STATES**
**POSTAL SERVICE** ®

| Track & Confirm | FAQs |

# Track & Confirm

### Search Results

Label/Receipt Number: 7007 0220 0004 3654 2468
**Status: Delivered**

Your item was delivered at 11:48 AM on September 14, 2007 in
WASHINGTON, DC 20044.

Additional Details >    Return to USPS.com Home >    Go >

Enter Label/Receipt Number.

Track & Confirm

**Notification Options**

Track & Confirm by email
Get current event information or updates for your item sent to you or others by email.    Go >

POSTAL INSPECTORS    site map    contact us    government services    jobs    National & Premier Accounts
Preserving the Trust    Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use    Privacy Policy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PHILLIP SHANE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No.  07-577 (RBW)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Currently before the Court is the government's August 1, 2007 motion to dismiss the pro se plaintiff's amended complaint.  The plaintiff has not responded to the government's motion.

The District of Columbia Circuit Court of Appeals has held that a district court must take pains to advise a pro se party of the consequences of failing to respond to a dispositive motion.  Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988).  "That notice . . . should include an explanation that the failure to respond . . . may result in the district court granting the motion and dismissing the case."  Id.  Accordingly, it is hereby

ORDERED that plaintiff shall respond to the defendant's motion to dismiss no later than September 15, 2007. See LCvR 7(b) (stating that oppositions to dispositive motions must be filed "[w]ithin 11 days of the date of service or at such other time as the Court may direct").  If plaintiff neither responds nor moves for an extension of time by the due date, the Court will treat the motion as conceded and enter judgment in favor of the defendants. See id.

(stating that "[i]f such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded").

     **SO ORDERED** this 29th day of August, 2007.


                    REGGIE B. WALTON
                    United States District Judge